# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WM. BOLTHOUSE FARMS, INC., <br><br> Defendant. <br><br> AND RELATED CROSS-CLAIMS | Case No.: 1:21-cv-0783 NONE JLT <br><br> ORDER GRANTING PLAINTIFFS' REQUEST FOR A STAY OF DISCOVERY <br><br> (Doc. 37) |

Plaintiffs Zurich American Insurance Company, General Security Indemnity Company of Arizona, Faraday Capital Limited, AIG Specialty Insurance Company, Lexington Insurance Company, and Westport Insurance Corporation assert property insurance policies held by Wm. Bolthouse Farms, Inc. did not cover Bolthouse for losses the company claimed related to the Coronavirus/COVID-19 pandemic. (*See generally* Doc. 7.) Bolthouse contends virus caused physical loss and damage to Bolthouse property and brings counter claims against the insurers. (*See* Doc. 13.)

Plaintiffs filed a motion for judgment on the pleadings and seek a stay of discovery pending resolution of the motion. (Doc. 37.) Bolthouse opposes the stay and seeks discovery of extrinsic evidence. (*See* Doc. 38 at 17-34.) The Court found the matter suitable for decision without oral arguments, and the motion was taken under submission pursuant to General Rule 618 and Local Rule

1

230(g). For the reasons set forth below, discovery in the matter is **STAYED** pending resolution of the motion for judgment on the pleadings.

**I.      Background**

Plaintiffs issued several commercial insurance policies to Bolthouse that provided coverage from June 2019 to June 2021. (Doc. 7 at 2-4, ¶¶ 2-7; *see also* Doc. 13 at 2-3, ¶¶ 2-7.) Bolthouse held coverage for the period of June 16, 2019 to June 16, 2020 with the following: Zurich Policy No. PPR3230590-00, Faraday Policy No. PRPNA1903436, General Security Indemnity Company of Arizona ("GSINDA") Policy No. FA0058173-2019-1, Westport Policy No. NAP 2003540 00, and Lexington Policy No. 021318090. (*Id.* at 2-3, ¶¶ 2-6; *see also* Doc. 13 at 2-3, ¶¶ 2-6.) Bolthouse held coverage for the period of June 16, 2020 to June 16, 2021 with the following: Zurich Policy No. PPR3230590-01, Faraday Policy No. PRPNA2003436, GSINDA Policy No. FA0058173-2020-1, Westport Policy No. NAP 2003540 01, and AIG Policy No. 044869187. (*Id.* at 2-4, ¶¶ 2-5, 7; Doc. 13 at 2-3, ¶¶ 2-5, 7.)

On May 15, 2020, "Bolthouse's broker provided a First Notice of Loss under the Policies with effective dates of coverage from June 16, 2019 to June 16, 2020 for "a claim involving property damage and business interruption at facilities owned by Bolthouse Farms, Inc., associated with COVID-19 related issues, orders and events." (Doc. 7 at 22, ¶ 48.) Plaintiffs' adjuster, McLarens, acknowledged the claim and issued a request for information to Bolthouse on June 10, 2020. (*Id.*, ¶ 49.) The insurance companies issued a reservation of rights letter on July 7, 2020. (*Id.*) On February 9, 2021, Bolthouse responded to the request and submitted claims under the 2021-20 Policies. (*Id.* at 23, ¶ 52.) Bolthouse indicated it was seeking coverage for the following:

- $1,362,503.00 for increased sanitization practices, product purchases, and third-party vendors for additional sanitization.

- $1,021,235.00 for PPE, equipment, and construction to implement social distancing requirements.

- $6,842,398.00 for contract tracing, employee losses, hiring of additional employees, employee backfill hires, temporary staffing, overtime, and COVID-19 sick pay.

- $1,376,473.00 for approximately 1.7 million pounds of growing organic carrots that were not harvested due to shortages of harvest crews and reduced capacity.

2

1  (*Id.*, ¶ 54.) On April 16, 2021, Bolthouse informed McLarens that it also was claiming $9,687,107.70
2  paid to employees as part of incentive and bonus programs. (*Id.* at 24, ¶ 57.) Thus, Bolthouse claimed a
3  total of $21,785,900.700 under the Policies. (*Id.*) "On May 14, 2021, McLarens issued two letters on
4  behalf of the Plaintiffs to advise Bolthouse that there is no coverage for Bolthouse's claims under the
5  Policies provided for the 2019-20 policy period or the 2020-21 policy period." (*Id.*, ¶ 58.)

6  The insurance companies ("Insurers") initiated this action by filing a complaint for declaratory
7  relief on May 14, 2021. (Doc. 1.) The Insurers filed an amended complaint on June 9, 2021. (Doc. 7.)
8  The Insurers assert each of the policies they issued to Bolthouse "are primary property insurance
9  policies," and "[f]or coverage under the Policies to be triggered, there must be direct physical loss of or
10 damage to covered property." (*Id.* at 5, ¶¶ 12-13.) Specifically, the Insurers report the Polices contain
11 the following language:

> 1.01. INSURING AGREEMENT
> This Policy Insures against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy.
> …
> 7.11   Covered Cause of Loss – All risks of direct physical loss of or damage from any cause unless excluded.

17 (*Id.*, ¶ 13, emphasis omitted.) The Insurers contend that to the extent Bolthouse asserts the company
18 sustained direct physical loss of or damage to its property, "there is no coverage under the Property
19 Damage provision because the Coronavirus/COVID-19 and/or any federal, state or local government
20 order issued in response to the COVID-19 pandemic did not cause physical loss of or damage to
21 property." (*Id.*, ¶ 14.) Similarly, the Insurers assert there was no coverage for the losses claimed by
22 Bolthouse "due to the necessary suspension of its business" and the decontamination or preservation of
23 property. (*See id.* at 5-11.)

24 Further, the Insurers contend the policies expressly exclude the losses claimed. (*See* Doc. 7 at
25 11-22.) According to Insurers, "[e]ven if the Coronavirus/COVID-19, and/or any federal, state or local
26 government order issued in response to the COVID-19 pandemic, caused direct physical loss of or
27 damage to property, Bolthouse's claimed losses would be excluded by the Policies various exclusions."
28 (*Id.* at 11-12, ¶ 29.) For example, the Insurers report the insurance policies exclude losses due to

3

"contamination," stating:

> 3.03.    EXCLUSIONS
>
> 3.03.01.    This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.
>
> 3.03.01.01.    Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.
>
> . . .
>
> 7.09.    Contamination(Contaminated) - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew.

(*Id.* at 12, emphasis omitted.)

Bolthouse filed an answer on July 7, 2021 and asserted the company "reasonably expected the Insurers to afford coverage for its financial losses under the property insurance and business interruption policies issued by its Insurers." (Doc. 13 at 20, ¶ 2.) Bolthouse maintains that its claims are covered under the polices. (*Id.* at 20-21, ¶¶ 2-4.) Therefore, Bolthouse stated counterclaims against the insurance companies for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) "declaratory relief confirming that the Insurers must honor the terms of their policies." (*Id.* at 21, ¶ 4.)

On August 4, 2021, the parties submitted a "Joint Rule 26(f) Report." (Doc. 15.) At that time, the Insurers indicated their intent to bring a motion for judgment on the pleadings to "resolve the threshold issue of coverage under the Policies." (*Id.* at 3.) In addition, the Insurers report they suggested discovery be stayed during the Rule 26 conference, but Bolthouse "propounded dozes of interrogatories and requests for admission, and more than forty requests for production on each Plaintiff." (*Id.*) The Court issued a scheduling order on August 9, 2021 and ordered the parties to complete all non-expert discovery no later than February 11, 2022 and all expert discovery no later than April 29, 2022. (Doc. 16 at 2.)

The parties submitted a joint informal discovery dispute brief related to a stay of discovery. (Doc. 17.) In setting a conference with the parties, the Court stated: "If Bolthouse is contending that

4

any of the discovery propounded already somehow bears on and would be admissible related to a motion for judgment on the pleadings, the relevant discovery requests SHALL be filed with the responsive brief." (Doc. 18.)  The Court held a conference with the parties on August 27, 2021. (Doc. 34.)  Because the dispute focused on whether the matter should be stayed to allow a motion for judgment on the pleadings and no motion was pending, the issue was premature and the Court declined to consider whether to stay the matter at the time. (Doc. 35 at 1.)  However, the Court indicated: "If the motion to stay is filed, the Court urges the parties to discuss in their briefs whether and the extent to which evidence may be admitted without converting it to a Rule 56 motion." (*Id.*)  In addition, the Court ordered:

> If the defendant opposes the stay, it SHALL describe with particularity the discovery needed <u>to oppose the Rule 12(c) motion</u> and the amount of time needed to conduct this discovery.  If the defense believes any of the discovery already propounded is needed to confront the motion for judgment, it SHALL identify it, provide the specific discovery requests at issue, and explain how the discovery will address the issues raised in the motion for judgment.

(*Id.* at 3, emphasis in original.)

On September 10, 20212, the Insurer Plaintiffs filed a motion for judgment on the pleadings and simultaneously filed a motion for protective order to stay discovery. (Docs. 36, 37.)  The parties filed a joint statement regarding the disputed request for a stay on September 24, 2021. (Doc. 38.)

**II.     Legal Standards**

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding discovery. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order has the burden "to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

District courts have "wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).  Notably, "the Federal Rules of Civil Procedure does not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Mlejnecky v. Olympus Imaging Am. Inc.*, 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011).  Although the Ninth Circuit has not provided a clear standard for evaluating a motion to stay discovery pending resolution of

a dispositive motion, the Court has indicated that district courts may grant a motion to stay for good cause. *Little*, 863 F.2d at 685 (affirming a district court's decision to stay discovery pending resolution of motion for summary judgment); *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming the granting of protective order to stay discovery pending resolution of motion to dismiss).

Blanket stays of discovery are disfavored because "delaying or prolonging discovery can create unnecessary litigation expenses and case management problems." *Salazar v. Honest Tea, Inc*., 2015 WL 6537813 at *1 (E.D. Cal. Oct. 28, 2015) (citing *Simpson v. Specialty Retail Concepts, Inc*., 121 F.R.D. 261, 263 (M.D.N.C. 1988)). When evaluating a motion to stay, district courts "inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Simpson*, 121 F.R.D. at 263. Thus, courts in the Ninth Circuit often apply a two-prong test to decide whether to stay discovery. *Mlejnecky*, 2011 WL 4889743 at *6 (collecting cases); *Seven Springs L.P. v. Fox Capital Mgmt.* Corp., 2007 WL 1146607 at *1 (E.D. Cal. Apr. 18, 2007). First, the Court must find the pending motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed." *Id.* Second, the Court must "determine whether the pending, potentially dispositive motion can be decided absent additional discovery." *Id.* If either prong is not met, discovery should not be stayed. *Id.*

### III.    Discussion and Analysis

The parties disagree "whether this Court should stay all discovery in this case pending resolution of the Insurers' MJOP." (Doc. 38 at 4.) The Insurers assert that "hundreds of cases nationwide and in California have dismissed virtually identical insurance claims under similar policies without any discovery and without the need to consider evidence outside the pleadings." (*Id.* at 5, emphasis omitted.) Thus, the Insurers contend no discovery is needed to address their pending motion, and discovery should be stayed. (*See generally id.* at 5- 16.) On the other hand, Bolthouse argues it seeks "information relevant to the issues raised in Insurers' motion for judgment on the pleadings," and the stay should not be imposed. (*Id.* at 17; *see also id.* at 17-34.)

**A.    Whether the pending motion is potentially dispositive**

It is indisputable that, if granted, the Insurer's motion for judgment on the pleadings—which addresses whether there was coverage under the identified policies—would be potentially dispositive

of the entire case. However, that does not end the inquiry, as the Court "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *GTE Wireless, Inc. v. Qualcomm, Inc*., 192 F.R.D. 284, 286 (S.D. Cal. 2000); *Tradebay, LLC v. eBay, Inc*., 278 F.R.D. 597, 602-603 (D. Nev. 2011) (same). Notably, the "preliminary peek" is not intended to prejudge the outcome of the motion. *See Tradebay*, 278 F.R.D. at 603 (acknowledging that "taking a 'preliminary peek' and evaluating a pending dispositive motion puts a magistrate judge in an awkward position," because the district judge "may have a different view of the merits of the underlying motion").

The Insurers argue, "Bolthouse has not sufficiently alleged 'direct physical loss or damage' to its insured property or, alternatively, that certain exclusions in the policies bar any coverage that otherwise might exist." (Doc. 38 at 4.) The Insurers report that "[b]ased on this same standard policy language, hundreds of courts across the country, including dozens of district courts applying settled California law have granted dispositive pleading motions in favor of the insurers, concluding that presence of COVID-19 and the issuance of prophylactic government orders do not constitute or cause 'direct physical loss of or damage' to property as a matter of law." (*Id.* at 4-5, emphasis omitted.) Furthermore, the Insurers observe that "[f]ederal district courts in California have been nearly unanimous in rejecting—***at the pleading stage***—Bolthouse's two theories of how it suffered 'direct physical loss or damage.'" (Doc. 38 at 10, emphasis in the original, citing *Out W. Rest. Grp., Inc. v. Affiliated Ins. Co*., 2021 WL 1056627, at *4 (N.D. Cal. Mar. 19, 2021) ("The overwhelming majority of courts have concluded that neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage.") [emphasis omitted].)

Bolthouse argues the Insurers' motion for judgment "is likely to fail on its merits, as Bolthouse's construction of the Policies is reasonable and in accordance with California law." (Doc. 38 at 18.) According to Bolthouse, "trial courts construing the phrase have not unanimously adopted Insurers' interpretative positions, but have come to different conclusions, underscoring the ambiguity in the phrase 'direct physical loss or damage to property.'" (*Id.* at 21-22, citing Penn Law, *Covid Litigation Coverage Tracker*, available at https://cclt.law.upenn.edu/ ; *Elegant Massage LLC v. State Farm Mut. Auto. Ins. Co. et al*., 2020 WL 7249624, *10 (E.D. Va. Dec. 9, 2020); *Novant Health Inc. v.*

*Am. Guar. & Liability Ins. Co.*, 2021 WL 4340006 (M.D.N.C. Sept. 23, 2021).) Bolthouse contends extrinsic evidence is necessary to address the ambiguity. (*See id.* at 21-34.)

Significantly, despite that it is undisputed that California law governs the interpretation of the insurance policies in issue (*See* Doc. 38 at 10, 19-21), Bolthouse does not cite cases applying California law when evaluating the phrase "direct physical loss or damage." Under California law, the "interpretation of an insurance policy is a question of *law*"—not fact— to be answered by the Court. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (emphasis added). Insurance policies are interpreted according to "general rules of contract interpretation[,]" under California law, which includes a directive to "give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636; *TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006). The court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18. "If contractual language is clear and explicit, it governs." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992). If the terms are ambiguous, or susceptible to more than one reasonable interpretation, courts "interpret them to protect the objectively reasonable expectations of the insured." But if the terms are ambiguous or susceptible to more than one reasonable interpretation, courts "interpret them to protect the objectively reasonable expectations of the insured." *Minkler v. Safeco Inc. Co.*, 49 Cal. 4th 315, 321 (2010).

Applying the standards of California law, district courts in the Ninth Circuit have determined that insurance policies requiring "direct physical loss or damage to" property—as the policies issued to Bolthouse—did not provide coverage for losses incurred due to COVID-19. *See, e.g., Wellness Eatery La Jolla LLC v. Hanover*, 517 F. Supp. 3d 1096, 1104 (S.D. Cal. 2021) ("the Court does not find that the presence of COVID-19 qualifies as physical damage to property because the virus harms human beings, not property"); *Palmdale Est., Inc. v. Blackboard,* 510 F. Supp. 3d 874, 876-77 (N.D. Cal. 2021) ("The majority view — including in this district — is that 'direct physical loss' provisions . . . do not cover lost business income or expenses resulting from closure orders… "); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 2021 WL 105772, at *4 (N.D. Cal. Jan. 12, 2021) ("the presence of the virus itself, or of individuals infected with the virus, at [a] business premises or elsewhere [does] not

constitute direct physical loss of or damage to property"). Consequently, courts applying California law have consistently granted motions for judgment on the pleadings in favor of the insurance companies, finding no coverage for claims alleging "direct physical loss or damage to" property due to COVID-19. *See, e.g., Wellness Eatery*, 517 F. Supp. 3d at 1108 (observing that "[w]hile the Court is sympathetic to [the] situation, it must find, as a matter of law, that their insurance claims are not covered by the Policy" and granting the insurer's motion); *Robert W. Fountain, Inc. v. Citizens Ins.*, 506 F.Supp.3d 847, 851-854 (N.D. Cal. 2020) (granting a motion for judgment on the pleadings in favor of the insurance company, finding there was no coverage because the insured failed to identify a "direct loss of damage to" property, and a virus exclusion applied); *Sky Flowers, Inc. v. Hiscox Ins. Co.*, 2021 WL 1164473 (C.D. Cal. Mar. 26, 2021) (finding no provision of the policy—which required physical loss or damage to the premises— covered the identified losses related to COVID-19).

Due to the prior decisions arising from district courts in the Ninth Circuit addressing the same policy language—as well as claims similar to those made by Bolthouse—it appears there is an immediate and clear possibility the Insureds' motion for judgment on the pleadings will be granted. Accordingly, the first prong of the test is satisfied.

**B.     Whether the motion can be decided without additional discovery**

In general, a court may not consider materials outside the pleadings in deciding a motion under Rule 12(c), and if such materials are presented and not excluded, the motion must be treated as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). Nevertheless, the crux of Bolthouse's argument against the imposition of a stay is that the company is entitled to present extrinsic evidence related to the contract interpretation, and discovery should be permitted for such extrinsic evidence. (*See* Doc. 38 at 19-30.) Bolthouse contends that "the Policies cannot be interpreted without discovery," and the stay of discovery would deprive Bolthouse of the "opportunity to present extrinsic evidence as to the intention of the parties in drafting the contract." (*Id.* at 19, 20, quoting *Trident Ctr. v. Conn. Gen. Life Ins Co.*, 847 F.2d 564, 570 (9th Cir. 1988).)

Bolthouse maintains it is entitled to the following discovery: documents related to the "Insurers' interpretation and understanding of the policy provisions in dispute," including all communications by the insuring companies related to coverage for SARS-CoV-2 and/or COVID-19;

9

"documents related to the drafting and underwriting of the policies," including all prior drafts, or any portion thereof; "evidence of Insurers' and the insurance industry's knowledge of its potential exposure for pandemic-related claims;" and "documents related to Insurer's handling of similar claims." (*See id.* at 24-28.). Notably, however, Bolthouse has not complied with this Court's order to "describe with particularity the discovery needed to oppose the Rule 12(c) motion and the amount of time needed to conduct this discovery." (Doc. 35 at 3, emphasis in original.) The Court also directed Bolthouse to identify "the specific discovery requests at issue, and explain how the discovery will address the issues raised in the motion for judgment." (*Id.*) Again, however, Bolthouse has not complied with the Court's order.

Bolthouse does not explain how documents addressing the Insurers' intent related to the policy, or the Insurers' knowledge of pandemic-related claims, confront issues raised in the motion for judgment on the pleadings. Bolthouse does not explain its belief that discovery related to the Insurers' intent would reveal a difference, as the Insurers clearly claim they did not intend to provide coverage for the claims. It is also unclear why Bolthouse what the insurance companies knew related to potential pandemic exposure if coverage was not offered for such issues bears on the issues raised in the motion. Bolthouse fails to explain why discovery related to similar claims is relevant to the determination as a matter of law whether the pertinent contract provisions are ambiguous or how these documents would address the terms at issue.

Courts evaluating the merits of similar motions for judgment on the pleadings have not found identical policy language to be ambiguous and have not required extrinsic evidence to determine whether coverage was provided for claims related to COVID-19. *See, e.g., Wellness Eatery,* 517 F. Supp. 3d at 1101-1108 (addressing whether the insured party identified a "direct physical loss of or damage to" property for coverage); *Out West Rest. Gr. Inc.*, 2021 WL 1056627 at *3-6 (addressing a policy that required "physical loss or damage" and excluded claims related to the presence of a virus); *Sky Flowers, Inc.*, 2021 WL 1164473 at *3-4 (evaluating coverage for COVID-19 losses claimed under a policy that "contains language conditioning recovery on 'physical loss of or damage to' the property," and excluded claims caused by or resulting from a virus). Thus, Bolthouse's claim that the terms are ambiguous and require extrinsic evidence for interpretation is unsupported. Because the

parties have the relevant policies in dispute, and the issue of coverage is a matter of law, the Court finds the motion for judgment on the pleadings may be determined without any additional discovery and the second prong of the test is satisfied.

### C. Balancing the harms of a stay

Even if the two prongs are met, the Court must determine whether it is an appropriate case to exercise its discretion to stay authority. In doing so, the Court must "properly balance the harm of staying discovery." *GTE Wireless v. Qualcomm, Inc.*, 192 F.R.D. 284, 289 (S.D. Cal. 2000); *see also Huynh v. Sutter Health,* 2021 WL 2268889 at *7 (E.D. Cal. June 3, 2021) ("a court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery").

Bolthouse notes that delaying discovery could cause "unnecessary litigation expenses and case management problems," and asserts such problems would arise in this action with a stay.  (Doc. 38 at 34, quoting *Salazar,* 2015 WL 6537813, at *1.)  Importantly, "injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).  To the extent that Bolthouse suggests the Court would face case management problems, it is in the interest of judicial economy to conserve judicial resources with a stay while the motion for judgment on the pleadings is pending.  Thus, the potential injuries identified by Bolthouse do not weigh against the entry of a stay.

### IV. Conclusion and Order

Based upon the foregoing, the Court finds the Insurers have demonstrated good cause for the entry of a stay and exercises its discretion to stay discovery. *See Little*, 863 F.2d at 685; *Wenger*, 282 F.3d at 1077 (affirming the granting of protective order to stay discovery pending resolution of a dispositive motion).  Accordingly, the Court **ORDERS**:

1. The Insurers' motion for a protective order to stay discovery (Doc. 37) is **GRANTED**;
2. The matter is **STAYED** pending resolution of the pending motion for judgment on the pleadings; and
3. Within 21 days after the Court's ruling on the motion for judgment on the pleadings, unless the ruling completely disposes of the case, counsel **SHALL** file a joint report

detailing the status of the case, including whether the stay should be lifted and, if so, proposing dates to reschedule the case.

IT IS SO ORDERED.

Dated:     **October 1, 2021**                          _ **/s/ Jennifer L. Thurston**
                                                    CHIEF UNITED STATES MAGISTRATE JUDGE